# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

re:

SMITH-ROTHCHILD FINANCIAL COMPANY,

        Debtor.

Chapter 7

Case No. 10 B 24427

Hon. Carol A. Doyle

---

## FINAL ORDER AUTHORIZING CHAPTER 7 TRUSTEE: (A) TO USE CASH COLLATERAL; (B) TO INCUR POSTPETITION DEBT; AND (C) TO GRANT ADEQUATE PROTECTION AND PROVIDE SECURITY TO THE CIT GROUP/BUSINESS CREDIT, INC., AS AGENT

This matter came on for hearing before this Court on the motion (the "Motion") of David P. Leibowitz ("Trustee"), solely in his capacity as chapter 7 trustee for the bankruptcy estate ("Estate") of Smith-Rothchild Financial Company ("Debtor"), requesting that this Court enter an order: (A) authorizing Trustee to use certain cash collateral; (B) authorizing Trustee to incur Post-Petition Debt; and (C) granting certain liens and other relief as adequate protection to The CIT Group/Business Credit, Inc. (the "Agent") as administrative agent for certain lenders to Debtor under the Pre-Petition Documents or the Post-Petition Documents, as applicable in the context of this order (Agent, in its capacity as a lender, together with such lenders, the "Lenders"). Unless otherwise indicated, all capitalized terms used as defined terms herein have the meanings ascribed thereto in *__Exhibit A__* attached hereto and by this reference are made a part hereof.

Having examined the Motion, being fully advised of the relevant facts and circumstances surrounding the Motion and having completed a hearing pursuant to Section 363 of title 11 of the United States Code (the "Bankruptcy Code") and FED. R. BANKR. P. 4001(b) and (c), and objections, if any, having been withdrawn, resolved and/or overruled by the Court, **THE COURT HEREBY FINDS THAT:**

1

A.    On May 28, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.

B.    The Court has jurisdiction over the Bankruptcy Case and this proceeding pursuant to 28 U.S.C. § 1334. Determination of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue over this Motion is proper under 28 U.S.C. § 1409(a).

C.    Subject to Paragraph 9(a), the Trustee has stipulated and represented to the Court that: (1) the Pre-Petition Documents evidence and govern the Pre-Petition Debt, the Pre-Petition Liens and the pre-petition financing relationship among Debtor, Agent and Lenders; (2) as of the Petition Date, Debtor is liable for payment of the Pre-Petition Debt, and the Pre-Petition Debt shall be an allowed claim in an amount not less than $3,471,850.95, exclusive of accrued and accruing Allowable 506(b) Amounts, if any;[6] (3) the Pre-Petition Debt constitutes the legal, valid and binding obligation of Debtor, enforceable in accordance with the terms of the Pre-Petition Documents; (4) the Pre-Petition Liens, among other things, secure payment of all of the Pre-Petition Debt; and (5) the Pre-Petition Liens are First Priority Liens, subject only to Permitted Liens.

D.    The Trustee represents, and the Court finds that upon the entry of this order, Agent's and Lenders' interests in the Pre-Petition Collateral will be adequately protected. Such finding is made without prejudice to Agent's and Lenders' rights to later assert that their interest in the Aggregate Collateral lacks adequate protection.

E.    An immediate need exists for the Trustee to use Cash Collateral to enable the Trustee to conduct an orderly wind-down and liquidation of the Debtor's business and assets.

F.    The Trustee is unable to obtain unsecured credit allowable under Bankruptcy Code § 503(b)(1) sufficient to finance the orderly wind-down and liquidation of the Debtor's business and assets. Except as provided below, the Trustee is unable to obtain credit allowable under Bankruptcy

---

[6]  Agent is not currently seeking payment of any Allowable 506(b) Amounts. Agent (on behalf of the Lenders) reserves all rights to seek payment of such amounts at a later date.

2

Code §§ 364(c)(1), (c)(2) or (c)(3) on terms more favorable than those offered by Agent.

G.     The terms of the Post-Petition Debt have been negotiated in good faith and at arms' length, and the Post-Petition Debt is being extended in good faith, as that term is used in Bankruptcy Code § 364(e).

H.     Under the circumstances of the Bankruptcy Case, the terms and conditions of this order are a fair and reasonable response to the Trustee's request for Agent's and Lenders' consent to use Cash Collateral and for the Trustee's incurrence of Post-Petition Debt, and the entry of this order is in the best interests of the Debtor's estate and its creditors.

I.     The notice provided by the Trustee of the Motion, the hearing on the Motion, and the entry of this order satisfy the requirements of FED. R. BANKR. P. 2002, 4001(b) and (c) and 9014 and Bankruptcy Code §§ 102(1), 363 and 364(c), and were otherwise sufficient and appropriate under the circumstances. Notice of the hearing and the Motion have been given to (i) all creditors and (ii) known holders of prepetition liens against Debtor's property.

**WHEREFORE, IT IS HEREBY ORDERED THAT:**

1.     The Motion is granted.

2.     <u>Authorization to Use Cash Collateral</u>.   The Trustee is authorized to use Cash Collateral:  (a) solely in accordance with and pursuant to the terms and provisions of this order; and (b) only to the extent required to pay those expenses enumerated in the Budget as and when such expenses become due and payable.  Prior to the Termination Date and indefeasible payment in full of the Aggregate Debt, the Trustee may not use or seek to use Cash Collateral other than pursuant to the terms of this order.

3.     <u>Procedure for Use of Cash Collateral</u>.

(a)     <u>Delivery of Cash Collateral to Agent</u>.  Subject to Paragraph 8(j), the Trustee is authorized and directed to deposit all Cash Collateral now or hereafter in his possession or under

3

10-24427:22.1:Motion to Use Cash Collateral:Proposed Order Entered: 9/9/2010 4:42:14 PM by:John Eggum Page 4 of 25

his control into the existing Blocked Account maintained at Bank (or to otherwise deliver all such Cash Collateral to Agent in a manner satisfactory to Agent) promptly upon receipt thereof. Agent shall thereafter apply such Cash Collateral in accordance with Paragraph 7(d) of this order.

(b)    Account Debtors. Without further order of the Court, the Trustee shall, and Agent may directly, notify in writing all account debtors or existing and future accounts receivable of Debtor and instruct all such account debtors to make payments directly into the Blocked Account or to such other deposit account as Agent shall specify.

(c)    Cash Collateral in Agent's Possession. Agent is authorized to collect, convert to cash and enforce checks, drafts, instruments and other forms of payment now or hereafter coming into its possession or under its control which constitute Aggregate Collateral or proceeds of Aggregate Collateral.

4.    Authorization To Incur Post-Petition Debt.

(a)    Post-Petition Documents. The Trustee, on behalf of Debtor's estate, is hereby authorized and agrees to: (1) execute the Post-Petition Documents and to make immaterial modifications thereto, if the Trustee receives the prior written consent of Agent and Lenders, without further order of this Court; and (2) perform his obligations under and comply with all of the terms and provisions of the Post-Petition Documents and this order. Upon execution and delivery thereof, the Post-Petition Agreement and other Post-Petition Documents shall constitute valid and binding obligations of Debtor enforceable in accordance with their terms. To the extent there exists any conflict among the Post-Petition Documents and the terms of this order with respect to any term of the Post-Petition Debt or Post-Petition Collateral, this order shall govern and control.

(b)    Permitted Uses of Post-Petition Debt. To the extent that Cash Collateral received from and after the Petition Date is sufficient to fund the payment of the expenses permitted under Paragraph 2 of this order, then the Trustee is hereby authorized to use such Cash

4

10-24427:22.1:Motion to Use Cash Collateral:Proposed Order Entered: 9/9/2010 4:42:14 PM by:John Eggum Page 5 of 25

Collateral; provided however, to the extent that there is not sufficient Cash Collateral for such purposes, then the Trustee is hereby authorized to borrow Post-Petition Debt pursuant to the terms of this order. Subject to the provisions of Paragraph 4(a) above, the Trustee is authorized to incur Post-Petition Debt solely: (a) in accordance with and pursuant to the terms and provisions of this order; and (b) to the extent required to pay those expenses enumerated in the Budget as and when such expenses become due and payable. Notwithstanding anything to the contrary in this Paragraph 4, however: (i) the Trustee is hereby authorized and directed to incur the Post-Petition Debt at any time to pay the Carveout and the Post-Petition Charges, and (ii) if Agent advances monies to the Trustee and the Trustee uses such monies other than in accordance with or pursuant to the terms or provisions of this order or the Post-Petition Documents, such advances shall be considered Post-Petition Debt for purposes of this order. The Trustee shall not be entitled to any Section 506(c) recovery or payment from the Pre-Petition Collateral, the Post-Petition Collateral or the proceeds thereof which would reduce any recovery on the Agent's and Lenders' secured claims.

(c)     Principal Terms of Post-Petition Debt.

(i)     Conditions to Post-Petition Advances.  At Agent's and Lenders' election, no Post-Petition Debt shall be incurred hereunder until the Post-Petition Agreement has been executed and delivered by the Trustee and it has become effective in accordance with the terms hereof.

(ii)     Maximum Amount.  The maximum principal amount of Aggregate Debt shall be calculated by adding $195,000.00 to the amount of the Pre-Petition Debt, exclusive of Post-Petition Charges and Allowable 506(b) Amounts, if any.  No other Advances shall be made under the Financing Agreement, other than revolving advances of Post-Petition Debt in accordance with this order.

5

(iii)    Interest.  The Post-Petition Debt shall bear interest at a per annum rate equal to the default rate as set forth in the Post-Petition Agreement.

(iv)    Maturity.  The Post-Petition Debt shall mature and be paid in full by the Trustee on the Termination Date.

(d)    Super-Priority Administrative Expense Status; Post-Petition Liens.  The Post-Petition Debt is hereby granted super-priority administrative expense status under Bankruptcy Code § 364(c)(1), with priority over all costs and expenses of administration of the Bankruptcy Case that are incurred under any provision of the Bankruptcy Code other than the Carveout.  In addition, Agent is hereby granted the Post-Petition Liens to secure the Post-Petition Debt.  The Post-Petition Liens:  (1) are and shall be in addition to the Pre-Petition Liens; (2) pursuant to Bankruptcy Code §§ 364(c)(2) and (c)(3), are and shall be First Priority Liens (subject only to the Pre-Petition Liens, Permitted Liens and the Carveout) without any further action by Trustee or Agent and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments; (3) shall not be subject to any security interest or lien which is avoided and preserved under Bankruptcy Code § 551; and (4) shall remain in full force and effect notwithstanding any subsequent dismissal of the Bankruptcy Case.  Notwithstanding the foregoing, the Trustee is authorized and directed to execute and deliver to Agent such financing statements, mortgages, instruments and other documents as Agent may deem necessary or desirable from time to time.  Further, any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) payment of any fees or obligations to any governmental entity, in order for the Trustee to pledge, grant, sell, assign or otherwise transfer such leasehold interest or the proceeds thereof or other Post-Petition Collateral related thereto, shall have no force and effect and shall not affect the status of the Post-Petition Liens as First Priority Liens hereunder.

6

5.    <u>Carveout Terms</u>.  With respect to each Carveout Professional:  (A) the Carveout for

such Carveout Professional shall consist of the lesser of (i) the line item amount as provided in the

Budget for such Carveout Professional, and (ii) the aggregate amount of allowed fees and expenses

of such Carveout Professional; (B) any prepetition retainer paid to any Carveout Professional and

any other property of the estate (other than property subject to an unavoidable lien in favor of

Agent and Lenders) shall be used to pay any fees or expenses of such Carveout Professional before

payments of such fees or expenses are made from proceeds of the Post-Petition Debt or the

Aggregate Collateral; (C) upon the Termination Date, Agent and Lenders shall have no further

obligation to fund any subsequently incurred fees or expenses of any Carveout Professional; and

(D) the Carveout shall not include, and no Aggregate Collateral may be used to pay, any fees or

expenses incurred by any entity (including, without limitation, the Trustee or any Carveout

Professional), in connection with claims, actions or services adverse to Agent and Lenders, or their

respective interests in the Aggregate Collateral, including, without limitation, (w) preventing,

hindering or delaying Agent's enforcement or realization upon any of the Aggregate Collateral once

an Event of Default has occurred, (x) using or seeking to use Cash Collateral or selling any other

Aggregate Collateral without Agent's consent, (y) incurring indebtedness without Agent's consent,

or (z) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent,

amount, perfection, priority or enforceability of the Aggregate Debt or any mortgages, liens or

security interests with respect thereto or any other rights or interests of Agent and/or Lenders, or in

asserting any claims or causes of action, including, without limitation, any actions under chapter 5 of

the Bankruptcy Code, against Agent and Lenders.  Nothing herein shall be construed as consent by

Agent to the allowance of any fees or expenses of any Carveout Professional or shall affect the right

of Agent to object to the allowance and payment of such fees, costs or expenses, or the right of

Agent to seek the return of any portion of the Carveout that is funded with respect to fees and

7

10-24427:22.1:Motion to Use Cash Collateral:Proposed Order Entered: 9/9/2010 4:42:14 PM by:John Eggum Page 8 of 25

expenses approved on an interim basis that are later denied on a final basis. No payment of the Carveout shall constitute a reduction of the Aggregate Debt.

      6.     <u>Termination of Right to Use Cash Collateral And to Incur Post-Petition Debt</u>.

      (a)     <u>Termination Date</u>. Unless extended by the Court upon the written agreement of Agent, this order and the Trustee's authorization to use Cash Collateral and incur Post-Petition Debt pursuant to this order will immediately terminate on the Termination Date without further notice or order of the Court. During the pendency of any motion filed by Agent alleging lack of adequate protection of its interests in the Aggregate Collateral, Agent shall have no obligation to consent to the use of Cash Collateral or to provide any Post-Petition Debt.

      (b)     <u>Rights Upon Termination</u>. On the Termination Date, the Trustee's authorization to use Cash Collateral pursuant to this order shall immediately terminate. Upon the Termination Date, without further notice or order of the Court, at Agent's election: (i) the Aggregate Debt shall be immediately due and payable; (ii) subject to the payment of the Carveout existing as of the Termination Date, Agent shall be entitled to apply or set off any cash in Agent's possession or control to the Aggregate Debt in accordance with Paragraph 7(d) of this order, until such Aggregate Debt is indefeasibly and finally paid in full; and (iii) the Trustee shall be prohibited from using any Cash Collateral for any purpose other than (x) first, to pay the Carveout, and (y) second, application to the Aggregate Debt in accordance with Paragraph 7(d) of this order, until such Aggregate Debt is indefeasibly and finally paid in full. Upon the Termination Date, at Agent's election and upon not less than five (5) business days' written notice to the Trustee: (A) without further order of the Court, Agent and Lenders shall have automatic and immediate relief from the automatic stay with respect to the Aggregate Collateral (without regard to the passage of time provided for in FED. R. BANKR. P. 4001(a)(3)), and shall be entitled to exercise all rights and remedies available to them under the Pre-Petition Documents, the Post-Petition Documents, the

Bankruptcy Code and applicable non-bankruptcy law with respect to the Aggregate Collateral; and (B) the Trustee shall surrender the Aggregate Collateral to Agent and otherwise cooperate to assist Agent and Lenders in the exercise of the rights and remedies available to Agent and Lenders under the Pre-Petition Documents, the Post-Petition Documents, the Code and applicable non-bankruptcy law with respect to the Aggregate Collateral.

7.     Adequate Protection of Interests of Agent and Lenders in the Pre-Petition Collateral and the Pre-Petition Liens.  As adequate protection of the interests of Agent and Lenders in the Pre-Petition Collateral and the Pre-Petition Liens for the use of Cash Collateral and any decline in the value of the Pre-Petition Collateral in accordance with Sections 361 and 363 of the Bankruptcy Code:

(a)     Priority of Pre-Petition Liens/Allowance of Agent's and Lenders' Pre-Petition Claim.  Subject to the reservation of rights set forth in this order:  (1) the Pre-Petition Liens shall constitute First Priority Liens, subject only to the Permitted Liens; (2) the Pre-Petition Debt constitutes the legal, valid and binding obligation of the Debtor, enforceable in accordance with the terms of the Pre-Petition Documents; and (3) Agent's and Lenders' claim with respect to the Pre-Petition Debt shall constitute an Allowed Claim in an amount not less than **$3,471,850.95** exclusive of accrued and accruing Allowable 506(b) Amounts, if any.

(b)     Agent Replacement Liens.  Agent and Lenders are hereby granted the Agent Replacement Liens as security for repayment of the Pre-Petition Debt.  The Agent Replacement Liens:  (1) are and shall be in addition to the Pre-Petition Liens; (2) are and shall be First Priority Liens (subject only to the Pre-Petition Liens, the Post-Petition Liens, Permitted Liens and the Carveout) that are properly perfected, valid and enforceable without any further action by the Trustee or Agent and Lenders and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments; and (3) shall remain

9

10-24427:22.1:Motion to Use Cash Collateral:Proposed Order Entered: 9/9/2010 4:42:14 PM by:John Eggum Page 10 of 25

in full force and effect notwithstanding any subsequent dismissal of the Bankruptcy Case. Notwithstanding the foregoing, the Trustee is authorized and directed to execute and deliver to Agent such financing statements, mortgages, instruments and other documents as Agent may deem necessary or desirable from time to time. All Cash Collateral used by the Trustee shall be deemed to be part of the Debtor's obligations owing to Agent and Lenders.

(c)      Allowed Bankruptcy Code § 507(b) Claim. If and to the extent the adequate protection of the interests of Agent and Lenders in the Pre-Petition Collateral granted to Agent and Lenders pursuant to this order proves insufficient, Agent and Lenders shall have an Allowed Claim under Bankruptcy Code § 507(b), subject to the Carveout, in the amount of any such insufficiency, with priority over:  (1) all costs and expenses of administration of the Bankruptcy Case that are incurred under any provision of the Bankruptcy Code, including Bankruptcy Code §§ 503(b), 506(c), 507(a), or 552(b); and (2) the claims of any other party in interest under Bankruptcy Code § 507(b).

(d)      Application of Cash Collateral.  Agent is authorized to apply all Cash Collateral now or hereafter coming into Agent's possession or control as follows: (i) all proceeds of Pre-Petition Collateral shall be applied (1) first, to payment of all Pre-Petition Debt, including all Allowable 506(b) Amounts, until all Pre-Petition Debt is paid in full in cash; and (2) second, to payment of all Post-Petition Debt; and (ii) all proceeds of Post-Petition Collateral not otherwise constituting Pre-Petition Collateral shall be applied (1) first, to payment of the Post-Petition Debt in respect of any Post-Petition Charges, until paid in full in cash; and (2) second, ratably to pay the Post-Petition Debt until paid in full in cash; provided however, that to the extent Agent and Lenders are obligated to return or disgorge any portion of the cash or non-cash proceeds of such disposition of Collateral, or any portion of such proceeds is otherwise rescinded or reduced for any reason, then in such event and to the extent of such return, disgorgement, rescission or reduction, the Pre-

10

Petition Debt or Post-Petition Debt, as applicable, shall be increased and reinstated as if no payment thereon had been made.

(e)   <u>Prohibition Against Priming Liens</u>.   No order shall be entered in this Bankruptcy Case authorizing the Trustee to incur debt secured by a lien which is equal to or superior to the Aggregate Liens, or which is given super-priority administrative expense status under Bankruptcy Code § 364(c)(1), unless, in addition to the satisfaction of all requirements of Bankruptcy Code § 364 for the incurrence of such debt:  (a) Agent has consented to such order; (b) there is no Aggregate Debt outstanding at the time of the entry of such an order, and no obligation of Lender to extend additional Post-Petition Debt; or (c) such credit or debt is first used to immediately pay the Aggregate Debt in full.

(f)   <u>Waiver of Section 506(c) Claims</u>.   Except for the Carveout, no costs and expenses incurred in connection with the administration of the Debtor's Bankruptcy Case, or in any future proceedings or cases related hereto, whether incurred pursuant to Section 726(b) of the Bankruptcy Code or otherwise, shall be charged against the Agent or Lenders, the Pre-Petition Collateral or the Post-Petition Collateral, pursuant to Section 506(c) of the Bankruptcy Code or otherwise, without the Agent's and Lenders' express written consent.

(g)   <u>Releases and Validation of Pre-Petition Debt and Liens</u>.   Subject to Paragraph 9(a), the Trustee, on behalf of the Debtor and its estate, hereby:   (i) releases and discharges Agent and each Lender, together with their respective affiliates, agents, attorneys, officers, directors and employees from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, any of the Pre-Petition Documents, any aspect of the prepetition relationship among Agent, Lenders and Debtor, or any other acts or omissions by Agent or Lenders in connection with any of the Pre-Petition Documents or their prepetition relationship with Debtor; and (ii) waives any and all defenses (including, without limitation, offsets and

11

'10-24427:22.1:Motion to Use Cash Collateral:Proposed Order Entered: 9/9/2010 4:42:14 PM by:John Eggum Page 12 of 25

counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability and non-avoidability (under Bankruptcy Code §§ 510, 544, 545, 547, 548, 550, 551, 552 or 553 or otherwise) of the Pre-Petition Debt and the security interests in and liens on the Pre-Petition Collateral in favor of Agent and Lenders (which liens and security interests are first priority subject only to the Permitted Liens).

      8.     Miscellaneous Provisions.

      (a)    Post-Petition Charges.  All Post-Petition Charges are hereby approved, however, such amounts shall not be due and payable absent further order of this Court.

      (b)    Subordination Agreements.  All Subordination Agreements, Intercreditor Agreements or the like relating to the Pre-Petition Debt shall be governed in accordance with their terms and shall be subject, in all respects, Bankruptcy Code § 510.

      (c)    Pre-Petition Documents; Conflicts.  To the extent there exists any conflict between the Motion, the Pre-Petition Documents, the Post-Petition Documents and the terms of this order, this order shall govern and control.

      (d)    Modification of Stay.  The automatic stay of Bankruptcy Code § 362 is hereby modified with respect to Agent and Lenders to the extent necessary to effectuate the provisions of this order.

      (e)    Financial Information; Insurance.  The Trustee is hereby directed to deliver to Agent such financial and other information concerning the business and affairs of the Debtor and any of the Aggregate Collateral as may be required pursuant to the Pre-Petition Documents, the Post-Petition Documents and as Agent shall reasonably request from time to time.  The Trustee is also directed to allow Agent access to Debtor's premises for the purpose of enabling Agent to inspect and audit the Aggregate Collateral and the Debtor's books and records.  Such access for such purpose shall be permitted during normal business hours and upon prior notice.  The Trustee

is further directed to deliver to Agent evidence, satisfactory to Agent, that to the extent the Aggregate Collateral is insured, the Trustee is named as loss payee/additional insured on all such policies; provided however, all insurance proceeds of the Aggregate Collateral shall be and remain subject to the Aggregate Liens.

(f)     No Waiver.  This order shall not constitute a waiver by Agent or any Lender of any of their respective rights under the Pre-Petition Documents, the Post-Petition Documents, the Bankruptcy Code or other applicable law, including, without limitation:  (1) their right to later assert that, notwithstanding the terms and provisions of this order, any of their interests in the Aggregate Collateral lack adequate protection within the meaning of Bankruptcy Code §§ 362(d) or 363(e); (2) their right to later assert a claim under Bankruptcy Code § 507(b); or (3) their right to seek payment of all Allowable 506(b) Amounts and Post-Petition Charges.  Agent's failure, at any time or times hereafter, to require strict performance by the Trustee of any provision of this order shall not waive, affect or diminish any right of Agent thereafter to demand strict compliance and performance therewith.  No delay on the part of Agent in the exercise of any right or remedy under this order shall preclude any other or further exercise of any such right or remedy or the exercise of any other right or remedy.  None of the rights or remedies of Agent under this order shall be deemed to have been suspended or waived by Agent unless such suspension or waiver is in writing, signed by a duly authorized officer of Agent, and directed to the Trustee specifying such suspension or waiver.

(g)     "Responsible Person".  By accepting the Budget submitted to them by the Trustee and by taking any other actions pursuant to this order, Agent and Lenders shall not:  (1) be deemed to be in control of the operations of Debtor or the bankruptcy estate of Debtor; or (2) be deemed to be acting as a "responsible person" with respect to the operation or management of Debtor or the bankruptcy estate of Debtor.

(h)     <u>Amendments</u>.   The Trustee, Agent and Lenders may enter into any amendments or modifications of the Post-Petition Documents or the Budget without the need of further notice and hearing or order of this Court; provided that (a) such modifications or amendments do not materially and adversely affect the rights of any creditor or other party-in-interest and (b) notice of any such amendment or modification is filed with this Court.

(i)     <u>Release</u>.   Upon the date that the Post-Petition Debt is paid in full, in cash, the Trustee, on behalf of Debtor's estate, shall execute and deliver to Agent and Lenders a general release of any and all claims and causes of action that could have been asserted or raised under or in connection with the Post-Petition Documents.

(j)     <u>Deposit Accounts; Authorization of Bank</u>.   All Cash Collateral maintained at Bank (whether in the Blocked Account or otherwise) may, at Agent's direction, at any time and from time to time be transferred to separate accounts specified and maintained by Agent.   The Trustee agrees, on behalf of Debtor's estate, that no existing accounts (maintained at Bank or otherwise) shall be closed and no new deposit accounts shall be opened in the name of Debtor without Agent's prior written consent.   Bank is authorized and directed to allow the Trustee full access to all accounts maintained by Bank in the name of Debtor (including, but not limited to, the Blocked Account), with such access to include the right to issue withdrawal, payment, transfer or other fund disposition instructions with respect to all such accounts; <u>provided that</u> the Trustee agrees that the usage of the portion of Cash Collateral consisting of funds in such accounts shall be subject to, and in accordance with, the terms of this order.

(k)     <u>Return of Aggregate Collateral</u>.   Any party in possession of any assets owned by Debtor's estate shall, at the request of the Trustee, deliver such assets to the Trustee.

9.     Binding Effect.

14

10-24427:22.1:Motion to Use Cash Collateral:Proposed Order Entered: 9/9/2010 4:42:14 PM by:John Eggum Page 15 of 25

(a)     <u>Stipulations and Findings</u>. The stipulations and admissions contained in this order, including, without limitation, in paragraph 7(g) of this order, shall be binding upon all parties in interest, including, without limitation, the Trustee, unless (a) a party in interest has properly filed an adversary proceeding (subject to the limitations contained herein, including, <u>inter alia</u>, in paragraph 9(b)) by the later of **November 22, 2010**, or (ii) such later date (x) as has been agreed to, in writing, by the Agent in its sole discretion or (y) as has been ordered by the Court based upon a finding of cause (the "<u>Challenge Deadline</u>"), (1) challenging the validity, enforceability, priority or extent of the Pre-Petition Debt or the Pre-Petition Liens on the Pre-Petition Collateral or (2) otherwise asserting or prosecuting any action for preferences, fraudulent conveyances, other avoidance power claims or any other any claims, counterclaims or causes of action, objections, contests or defenses that the Debtor's estate may have (collectively, "<u>Claims and Defenses</u>") against the Agent, the Lenders or their respective affiliates, representatives, attorneys or advisors in connection with matters related to the Pre-Petition Documents, the Pre-Petition Debt, or the Pre-Petition Collateral, and (b) there is a final order in favor of the plaintiff sustaining any such challenge or claim in any such adversary proceeding filed by the Challenge Deadline.  If no such adversary proceeding is filed by the Challenge Deadline, (x) the Pre-Petition Debt shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in this Bankruptcy Case, (y) the Pre-Petition Liens on the Pre-Petition Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding and perfected, not subject to recharacterization, subordination, avoidance or reduction, except by payment and (z) the Pre-Petition Debt, the Pre-Petition Liens on the Pre-Petition Collateral and the Pre-Petition Secured Parties shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtor's estate, including, without limitation, by any chapter 7 trustee.  If any such adversary proceeding is properly filed by the Challenge Deadline, the stipulations and

15

admissions contained herein shall nonetheless remain binding and preclusive, except to the extent that such findings and admissions were expressly challenged in such adversary proceeding. Nothing in this order vests or confers on any Person (as defined in the Bankruptcy Code), standing or authority to pursue any cause of action belonging to the Debtor's or their estate, including, without limitation, Claims and Defenses with respect to the Pre-Petition Liens or the Pre-Petition Secured Obligations.

(b)     Limitation on Use of Post-Petition Debt and Collateral. The Trustee shall use the proceeds of the Post-Petition Debt solely as provided in this order and in the Post-Petition Documents. Notwithstanding anything herein or in any other order by this Court to the contrary, no borrowings, Cash Collateral, Pre-Petition Collateral, Collateral or the Carve Out may be used to (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under this order, the Post-Petition Documents or the Pre-Petition Documents, or the liens or claims granted under this order, the Post-Petition Documents or the Pre-Petition Documents, (b) assert any Claims and Defenses or causes of action against the Agent and/or Lenders or their respective agents, affiliates, representatives, attorneys or advisors, (c) prevent, hinder or otherwise delay the Agent and/or Lenders' assertion, enforcement or realization on the Cash Collateral or the Collateral in accordance with the Post-Petition Documents, the Pre-Petition Documents or this order, (d) seek to modify any of the rights granted to the Agent and/or Lenders under the Post-Petition Documents or the Pre-Petition Documents, in each foregoing case without such party's prior written consent or (e) pay any amount on account of any claims arising prior to the Petition Date unless such payments are approved by an order of this Court. The foregoing shall not limit the ability of the Trustee to use the Carve Out to investigate matters referenced in paragraph 9(a) of this order.

(c)     Order.  Except as provided in Paragraph 9(a) of this order, this order shall be binding on all parties in interest in this Bankruptcy Case and their respective successors and assigns, including, without limitation, the Trustee.  Upon the occurrence of the Termination Date, or if any of the provisions of this order are hereafter modified, vacated or stayed by subsequent order of this Court or any other court, such termination or subsequent order shall not affect:  (a) the priority, validity, enforceability or effectiveness of any lien, security interest, priority, or other benefit authorized hereby with respect to any Cash Collateral used or Post-Petition Debt incurred prior to the effective date of such subsequent order (and all such liens, security interests, priorities and other benefits shall be governed in all respects by the original provisions of this order and Agent shall be entitled to all the rights, remedies, privileges and benefits, including the liens and priorities granted herein, with respect to the Post-Petition Debt); (b) the releases set forth in Paragraph 7(g) (subject to the rights of parties in interest as set forth herein) or (c) subject to Paragraph 9(a), the stipulations and findings contained herein.  Except as otherwise explicitly set forth in this order, no third parties are intended to be or shall be deemed to be third party beneficiaries of this order or the agreements of the Trustee, Agent, Lenders herein or in the Pre-Petition Documents or the Post-Petition Documents.

(d)     Survival.  The provisions of this order, and any actions taken pursuant to or in reliance upon the terms hereof, shall survive entry of, and govern in the event of any conflict with, any order which may be entered dismissing the Bankruptcy Case.  The terms and provisions of this order, including the rights granted Agent under Bankruptcy Code § 364(c), shall continue in full force and effect until all of the Aggregate Debt and other Obligations are indefeasibly paid in full and discharged.

·10-24427;22.1:Motion to Use Cash Collateral:Proposed Order Entered: 9/9/2010 4:42:14 PM by:John Eggum Page 18 of 25

     10.    This order shall constitute findings of fact and conclusions of law pursuant to FED.

R. BANKR. P. 7052 and shall take effect and be fully enforceable as of the Petition Date.


Date: Sept. 27, 2010    Enter: _____

                                       Hon. Carol A. Doyle
                                       United States Bankruptcy Judge


Prepared By:
David P. Leibowitz (ARDC # 1612271)
John Eggum (ARDC # 6296314)
Lakelaw
420 W. Clayton Street
Waukegan, Illinois 60085-4216
847.249.9100

## EXHIBIT A – DEFINED TERMS

<u>Agent Replacement Liens</u>.  First Priority Liens in the Post-Petition Collateral granted to Agent and Lenders, pursuant to this order, subject only to:  (a) the Pre-Petition Liens; (b) the Post-Petition Liens; (c) Permitted Liens (as and to the extent applicable); and (d) the claim of the United States Trustee for the payment of fees under 28 U.S.C. § 1930(a).

<u>Aggregate Collateral</u>.   Collectively, the Pre-Petition Collateral and the Post-Petition Collateral.

<u>Aggregate Debt</u>.  Collectively, the Pre-Petition Debt and the Post-Petition Debt.

<u>Aggregate Liens</u>.  Collectively, the Pre-Petition Liens, the Agent Replacement Liens and the Post-Petition Liens.

<u>Allowable 506(b) Amounts</u>.  If allowed by subsequent order of the Bankruptcy Court, interest at the default rate under the Financing Agreement and all fees, costs, expenses and other charges due or coming due under the Pre-Petition Documents or in connection with the Pre-Petition Debt (regardless of whether such fees, costs, interest and other charges are included in the Budget) to the extent allowable under Bankruptcy Code § 506(b), including, without limitation, all reasonable out-of-pocket filing and recording fees, attorneys' and paralegals' fees and expenses and all other costs and expenses incurred by Agent and Lenders under the Pre-Petition Documents with respect to the Pre-Petition Debt.

<u>Allowed Claim</u>.  Any claim, as that term is defined in Bankruptcy Code § 101, for which a proof of claim was timely and properly filed, or which has been or hereafter is listed by Debtor on its schedules as liquidated in amount and not disputed or contingent, provided that:  (a) no objection to the allowance of the claim is timely interposed; or (b) if any objection to the allowance of the claim is timely interposed, the claim has been allowed.

<u>Bank</u>.  Cole Taylor Bank.

Blocked Account. Deposit account number ending in 2355 maintained in the name of Debtor at Bank, which account is subject to that certain Blocked Account Control Agreement among Bank, Debtor and Agent dated as of July 31, 2008.

Budget. The budget attached to this order as Exhibit B, as amended, modified or supplemented from time to time, as agreed to in writing by the Agent and the Trustee.

Carveout. For the purposes of enabling the Debtor's estate to pay (a) allowed fees and disbursements of each Carveout Professional as may be awarded from time to time pursuant to Bankruptcy Code § 330; provided however, that the Carveout may be used only subject to the terms and provisions of Paragraph 5 of this order; and (b) the Trustee's compensation (calculated in accordance with Bankruptcy Code § 326(a)).

Carveout Professionals. LakeLaw, counsel for the Trustee, Blackman Kallick, accountants for the Trustee and Plan B Solutions, LLC, financial advisor for the Trustee.

Bankruptcy Case. This chapter 7 case of Debtor and any superseding Chapter 11 or Chapter 7 case of Debtor.

Cash Collateral. All "cash collateral," as that term is defined in Bankruptcy Code § 363(a), in which Agent and Lenders have an interest, all deposits subject to setoff rights in favor of Agent and Lenders, and all cash arising from the collection or other conversion to cash of the Aggregate Collateral, including, without limitation, from the sale of inventory and the collection of accounts receivable. To the extent any such cash collected or received is not clearly identifiable as attributable to Pre-Petition Collateral or Post-Petition Collateral, such cash shall be deemed to be proceeds of Pre-Petition Collateral.

Challenge. A claim or cause of action challenging the validity, perfection, enforceability or extent of Agent's Pre-Petition Liens or any other claims or causes of action against the Agent or Lenders, which any party-in-interest (including the Trustee) may bring, in accordance with

Paragraph 9(a) of this order.

Financing Agreement.  That certain Financing Agreement dated as of January 8, 2007, by and among the Debtor, Agent and Lenders (as amended, modified or supplemented from time to time).

Event of Default.  At Agent's and Lenders' election, any one or more of the following: (a) the occurrence and continuance of any Event of Default first arising after the Petition Date under the Financing Agreement (other than by reason of Sections 10(a), 10(b) or 10(c) of the Financing Agreement); (b) the Trustee fails to perform any of his obligations in strict accordance with the terms of this order; (c) the Trustee, without the consent of Agent and Lenders, seeks the use of Cash Collateral other than in accordance with the terms of this order; (d) the Trustee, without the consent of Agent and Lenders, files a motion to incur debt secured by a lien with priority equal to or superior to the Post-Petition Liens or which is given super-priority administrative expense status under Bankruptcy Code § 364(c) other than in accordance with the terms of this order; (e) the Trustee files a motion to conduct a Bankruptcy Code § 363 sale of all or part of the Aggregate Collateral on terms unacceptable to Agent and Lenders; (f) entry of any order authorizing any party in interest to reclaim any of the Aggregate Collateral, granting any party in interest relief from the automatic stay with respect to the Aggregate Collateral, or requiring that the Trustee turnover any of the Aggregate Collateral, in each case prior to full, final and indefeasible repayment of all Aggregate Debt; (g) entry of any order requiring the Trustee to pay (prior to full, final and indefeasible repayment of all Aggregate Debt) any amounts in respect of claims under Bankruptcy Code § 503(b)(9) or otherwise on account of goods shipped to Debtor prior to the Petition Date; (h) any material representation or warranty made by the Trustee in any certificate, report or financial statement delivered to Agent or any Lender proves to have been false or misleading in any material respect as of the time when made or given (including by omission of material information necessary

Case 10-24427 Doc 30 Filed 09/27/10 Entered 09/27/10 12:29:37 Desc Main
Document Page 22 of 25
10-24427;22.1:Motion to Use Cash Collateral:Proposed Order Entered: 9/9/2010 4:42:14 PM by:John Eggum Page 22 of 25


to make such representation, warranty or statement not misleading); (i) commencement of an adversary proceeding or contested matter objecting to the extent, validity or priority of the Pre-Petition Debt and/or the Pre-Petition Liens; or (j) the order is modified, amended, vacated or stayed in any manner not consented to in writing by Agent.

First Priority Liens. Liens which are first priority, properly perfected, valid and enforceable security interests, which are not subject to any claims, defenses, or setoffs, and which are otherwise unavoidable under any provisions of the Bankruptcy Code.

Permitted Liens. Collectively, (a) liens in favor of third parties upon the Pre-Petition Collateral, which third-party liens, as of the Petition Date: (i) had priority under applicable law over the Pre-Petition Liens, (ii) were not subordinated by agreement or applicable law, and (iii) were non-avoidable, valid, properly perfected and enforceable as of the Petition Date; (b) the Carveout; and (c) the claim of the United States Trustee for the payment of fees under 28 U.S.C. § 1930(a).

Post-Petition Agreement. That certain Post-Petition Agreement dated September 23, 2010, by and among Debtor, Agent and Lenders.

Post-Petition Charges. All fees, costs, expenses, interest at the rate provided by the Post-Petition Agreement, and other charges due or coming due in connection with the Post-Petition Debt (regardless of whether such fees, costs, interest and other charges are included in the Budget), including, without limitation, all out-of-pocket filing and recording fees, attorneys', paralegals', and other fees, costs, expenses and other charges incurred by Agent or Lenders or otherwise arising under this order or the Post-Petition Documents with respect to the Post-Petition Debt, including such fees, costs and charges incurred before, on, or after the Petition Date in connection with: (a) the negotiation, preparation and submission of the Post-Petition Documents, this order and any other order or document related hereto; and (b) the representation of Agent and Lenders in the Bankruptcy Case in connection with the Post-Petition Debt or the Post-Petition Liens.

Post-Petition Collateral.   All of the real and personal property of the Debtors of any description whatsoever, wherever located and whenever arising or acquired, including, without limitation, all cash, accounts, inventory, equipment, fixtures, chattel paper, and general intangibles (including, without limitation, tax refunds and claims and recoveries under Bankruptcy Code §§ 544, 547, 548, 549, 550 and 553), and all proceeds and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any of the foregoing.

Post-Petition Debt.   (a) All indebtedness or Obligations of Debtor and/or the Trustee to Agent and Lenders incurred on or after the Petition Date pursuant to this order, the Post-Petition Documents or otherwise, including, any advances made by Agent to pay Allowable 506(b) Amounts, if allowed by order of the Bankruptcy Court, plus (b) the Post-Petition Charges.

Post-Petition Documents.   The Post-Petition Agreement and all documents that Agent and Lenders find reasonably necessary to implement the transactions contemplated by the Post-Petition Agreement.

Post-Petition Liens.   First Priority Liens in the Aggregate Collateral, subject only to the Pre-Petition Liens and Permitted Liens.

Pre-Petition Collateral.   All of the Collateral (as that term is defined in the Financing Agreement) existing as of the Petition Date, and all proceeds and products thereof.

Pre-Petition Debt.   All indebtedness or obligations under the Pre-Petition Documents as of the Petition Date, including all fees, interest and expenses.

Pre-Petition Documents.   The Financing Agreement and the Loan Documents (as that term is defined in the Financing Agreement).

Pre-Petition Liens.   Agent's and Lenders' asserted security interests in the Pre-Petition Collateral under the Pre-Petition Documents, subject only to: (a) Permitted Liens; and (b) the claim of the United States Trustee for the payment of fees under 28 U.S.C. § 1930(a).

10-24427:22.1:Motion to Use Cash Collateral:Proposed Order Entered: 9/9/2010 4:42:14 PM by:John Eggum Page 24 of 25

<u>Termination Date</u>.  At Agent's election, the earliest to occur of:  (a) the date on which Agent provides written notice to the Trustee of the occurrence of an Event of Default, pursuant to which notice Agent has elected to declare the occurrence of the Termination Date; (b) the entry of an order approving the sale of the Aggregate Collateral; and (c) October 29, 2010 (as such date may be extended by written agreement of the Trustee and Agent.

# EXHIBIT B - BUDGET

## 13 WEEK CASH FLOW BUDGET

| WEEK #: | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | BUDGET |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash Balance | - | 1,900 | 3,000 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | - |
| **Incoming Cash:** | | | | | | | | | | | | | | |
| Deposits from CIT | 10,000 | 10,000 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 150,000 | 195,000 |
| Total Incoming Cash | 10,000 | 10,000 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 150,000 | 195,000 |
| **Cash Disbursements:** | | | | | | | | | | | | | | |
| Utilities | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 13,000 |
| Smith Rothchild Office Rent & Misc. Exp [1] | 5,600 | - | - | - | - | - | - | - | - | - | - | - | - | 5,600 |
| Updated Title Search | - | 6,400 | - | - | - | - | - | - | - | - | - | - | - | 6,400 |
| Noticing Service | - | - | 1,500 | - | - | - | - | - | - | - | - | - | - | 1,500 |
| Bankruptcy Trustee Commission [2] | - | - | - | - | - | - | - | - | - | - | - | - | TBD | TBD |
| Lakelaw (Trustee Attorney) [3] | - | - | - | - | - | - | - | - | - | - | - | - | 30,000 | 30,000 |
| Blackman Kallick (Tax Return Processing) [3] | - | - | - | - | - | - | - | - | - | - | - | - | 25,000 | 25,000 |
| Condition of Collateral Due Diligence and Analysis (Plan B) [3] | - | - | - | - | - | - | - | - | - | - | - | - | 84,000 | 84,000 |
| Misc. Expenses (Trustee) | - | - | - | - | - | - | - | - | - | - | - | - | 10,000 | 10,000 |
| Misc. Expenses (Life Safety/Public Welfare) | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 19,500 |
| Total Cash Disbursements | 8,100 | 8,900 | 4,000 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 151,500 | 195,000 |
| Net cash flow | 1,900 | 1,100 | (1,500) | - | - | - | - | - | - | - | - | - | (1,500) | - |
| Ending Cash Balance | 1,900 | 3,000 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | - |

[1] Rental assumption is based on 4,000 square feet at rate of $16.00 per foot gross – Rent paid for 1st month only.
[2] To be completed in accordance with 11 U.S.C. Section 326 and paid upon Order of the Court approving same.
[3] Estimated fees & expenses to be paid upon Order of the Court approving same.